Judge Underwood
delivered the Opinion of the Court.
Bibb filed his bill against Smith, and others, for the purpose of subjecting to the payment of certain judgments, a debt which Anderson once owed Smith, and which he, as is alleged, fraudulently transferred to Allen, in order to deceive creditors, and put it beyond their reach.
Smith made his answer a cross bill, and prayed to be relieved from the payment of one of the judgments for,, four hundred dollars, because, as he alleges, the note on which that judgment was obtained-, was a gratuity.' From the statements of the cross bill, it seems that'Smith, the defendant in error, was interested in establishing the will of William B:' Smith, deceased, and that he made a contract with Bibb, as an attorney, to attend to and manage the suit (then depending before this court) for him; and that Bibb agreed to do it “ in consideration of twenty five dollars in hand paid, seventy-five dollars to be paid some time thereafter, for which this respondent gave to said Bibb his note of hand, and one hundred dollars conditioned upon the will being established, and for which this respondent also gave his note ; which notes are the foundation of two of the judgments in complainant’s bill mentioned.” The cross bill then proceeds to charge— “that-after the said suit was argued and submitted to the court for their decision, the said Bibb induced him to give him, the said Bibb, another note for four hundred dollars, to he paid in the ev-ent of the said will’s being established, and, as this respondent most positirein-states, without any other'.or additional consideration, than the services rendered in compliance with the con *581 tract aforesaid.” This note, from the allegations of the cross bill, is the foundation of the judgment for the four hundred dollars, against which the court is asked for a perpetual injunction.
If a debtor gets his debtor to give a bond to a third party, itt lieu of one payable to him, or otherwise transfers his claims, to defraud his creditors, they may nevertheless he reached by an attachment bill.
The denial of an answer must prevail against a single deposition without cor roborating circumstances.
Bibb demurred to the cross bill. Upon the hearing, the circuit court dismissed the original bill, with costs, and perpetually enjoined the collection of the judgment for four hundred dollars. To reverse these proceedings, Bibb prosecutes a writ of error.
If the debt on Anderson was fraudulently transferred and shifted into the hands of Allen, with a view to defraud creditors, and if Allen held the demand for Smith’s benefit, then there can be no doubt of the error on the part of the court in refusing relief upon the original bill. Whether the transfer was so made, and the debt thus held, is matter of fact to be enquired into. Anderson’s deposition is the only one in the cause. He proves that Smith told him, “ he was afraid that the money would be stopped in deponent’s hands to pay debts he owed George M Bibb and others,” and got him to give a new note to Aaron Smith. That it remained in that situation for some time, when, at the request of Smith, the defendant in error, the deponent executed a new note to Allen, for no other consideration than the old note. Smith said Allen intended to give every thing he was worth to Smith’s children. Allen was present when the note was executed to him, and no consideration was mentioned, except the giving up the old note, and the deponent understood from the conversation between the parties, that the object was to prevent the money being stopped in his bands.” The testimony of this witness leaves no doubt of the combination between Smith and Allen, to secrete the debt on Anderson, and to keep it from the creditors of Smith. If, therefore, it is corroborated by any circumstances, so as to preponderate against the answers of Smith and Allen, the decree should be reversed, and the cause remanded, with directions to grant relief to Bibb. We have been unable, however, to find in the record any corroborating circumstance which is sufficient to' make a single deposition overturn the denials of the *582 answers. It therefore follows that the court correctly-dismissed the original bill.
A mere gift or gratuity cannot be enforced in equity. Rat a-gainsC a judgment on a bond, (which imports a suRcient consideration,) unless the want,or failure, of consideration, total or partial, is clearly shown, the chancellor will not relieve on that ground; it cannot be inferred from the fact,, that the payee “ induced” the promi-sor to give his note, .as .a compensation above what had been agreed upon, for services rendered.
Contracts between attorneys and their clients are viewed with suspicion ; and conveyances betwixt them have been set aside, upon the idea that the lawyers might, and probably did, take advantage of their situation to procure them. Contracts made alter the lawyer s services are completed, are not liable to this objection. Aorshould the chancellor interfere, in any case, unless it appears that the la w yer has, in someway, taken an undue advantage of his station, or influence, in making the bargain.
*582 We cannot approve the decree perpetually enjoining the collection of the judgment for four hundred dollars. We admit that the chancellor should never enforce a contract unless it be supported by a good or a valuable consideration. A mere gratuity cannot be enforced in a court of equity. Banks vs. May’s heirs, 3 Marsh. 436. But here the chancellor is not called upon to enforce a"gift or gratuity. On the contrary, he is asked to relieve against a judgment founded on a note, which, by the statute of 1812; possesses the dignity of a'sealed instrument, and therefore prima facie importing a sufficient consideration. Before relief should be afforded, the complainant, in such a case, should clearly shew an entire or partial failure of consideration, or that there was no consideration whatever. All that Smith insists on is, that Bibb, for a compensation of one hundred dollars certain, and one hundred dollars conditional, engaged to perform the entire service in attending to the suit, and after it was ar* gued and submitted to the court, Bibb “ induced” him to give the additional note for four hundred dollars, by way of additional compensation for the services rendered. But what were the inducements held out by Bibb? What statements did he make? What were the facts?- The record furnishes no answer to these questions. Suppose the labor of preparing the suit for trial, and the labor of the trial, ‘and the argument before the court, were greatly more burdensome than anticipated, and that Smith perceiving it, chose, upon the suggestion of Bibb, to make additional compensation, would a note executed for that purpose require the interposition of. the chancellor to prevent its collection.
We know that transactions between attorneys and clients do not stand, in the eye of the law, precisely upon the same footing with those which take place among men not connected b,v any confidential relation. See I Maddock, 114. A court of equity has. frequently overhauled contracts between attorney and client, and set *583 aside conveyances, upon tiie ground, that the attitude of the lawyer enabled him to take an undue advantage of the client, and that he availed himself of the opportunity to do it. To justify the interference of the chancellor in such cases, it should appear, that the attorney excited fear in his client, and abused his influence to obtain an exorbitant reward, or that the transaction was tainted by fraud, misrepresentation or circumvention. The allegations of the cross bill (which are confessed by the demurrer,) do not shew, that Bibb abused his influence, or prac-tised any fraud, misrepresentation or circumvention.— On the contrary, it is fairly to be inferred, that he had performed his engagement, and consequently, that his influence could not thereafter be made to operate in such manner as to extort from his client an exorbitant reward. When the labor is over, and the cause submitted to the court, there is little danger from improper influence, and then the client may be generous if he pleases to be so. If, under such circumstances, he executes a note, and suffers judgment to go by not defending at law, we do not perceive the obligation on the part of the chancellor to relieve him. If the note had been given to stimulate Bibb to greater exertions before the services were rendered, we are inclined to think that its acceptance by Bibb, as additional compensation, after a previous bargain, for a full fee, would have been sufficient to authorize the conclusion that it was obtained by the exercise of an improper influence, and had the case presented itself in that aspect, we would not have disturbed the decree.
‘ The record does not shew, taking all the allegations of the cross bill to be true, that Bibb violated his duty as attorney, in order to (t induce” Smith to execute the note. Under all the circumstances, therefore, we think the court erred in perpetuating the injunction. Wherefore, that part of the decree is reversed, with costs, and the cause remanded with directions to dismiss the cross bill.