## Haywood v. Gooch.

(Decided Oct. 11, 1935.)

C. F. SEE, Jr., for appellant.

W. D. O'NEAL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and plaintiff below, Mallisa J. Gooch, filed this equity action in the Boyd circuit court against appellant and defendant below Martha Haywood and her husband, Austin Haywood, seeking to recover a judgment against them on two promissory notes which she held against them, one for $722.60 and the other for $300. She also sought the enforcement of a mortgage lien on described real estate that defendants had executed to secure both notes. Defendants filed their joint answer, in the first paragraph of which they attempted in a way to deny some of the material averments of the petition, and in a second paragraph they relied on an offset amounting to $1,095 which they alleged plaintiff owed them for board that defendants furnished plaintiff for the period of 1,095 days, and that $1 per day was a reasonable charge. They prayed that if plaintiff's claim was sustained, either in whole or in part, their claim be offset against it and that they have judgment against plaintiff for the excess. Following pleadings made the issues and upon final submission after proof taken the court entered judgment in favor of plaintiff for her entire claim and directed the enforcement of the mortgage lien on the encumbered real estate, but made no reference in his judgment to defendants' pleaded offset, and this is an appeal by appellant (the wife) alone from that judgment; the husband not joining therein.

In brief for appellant, counsel makes no reference to the fact that the court failed to refer to the offset in its judgment, nor does he make any claim that such omission left the issues therein raised undetermined and to be hereafter disposed of. However, if such argument had been presented it would have been unavailable. A similar question was presented in the case of Bozeman Mortuary Association v. Fairchild, 253 Ky. 74, 68 S. W. (2d) 756, 757, 92 A. L. R. 419, in which we said, in disposing of it: "Although the judgment does not by its express language dispose of the issues of damage claimed by the plaintiff, it is nevertheless to be regarded as a final judgment in that respect, for it ef-

fectually denied the claims by ignoring them.'' It was there insisted that inasmuch as the matters referred to were not expressly adjudciated they were not passed on by the court in rendering the judgment appealed from. But since the judgment that was rendered necessarily took into consideration the matters that the judgment did not expressly refer to, we held that they should be considered as having been determined by the trial court. An opposite conclusion would lead to an absurdity, since it would be folly for the court to give plaintiff judgment if at the same time it thought that defendant's alleged claim was sufficient to cancel the indebtedness sued on.

Counsel for appellant argues two grounds for a reversal of the judgment, which are: (1) That the court erred in excluding certain testimony to which defendant filed written exceptions, and (2) that the judgment denying defendant's offset is not supported by the testimony taken in the case, each of which will be disposed of in the order named.

The exceptions went to the competency of certain questions and answers propounded to various witnesses, as well as to the competency of Austin Haywood, a defendant and husband of appellant, whose deposition was taken by plaintiff as if on cross-examination, he having joined his wife in the defense to the action and was a joint maker of the notes sued on as well as joint title holder of the mortgaged land to secure them. Whatever we might think with reference to the merits of any of such exceptions, we are precluded from considering them because they were never passed on by the court, and defendant urged no such ruling by the court, but passively ignored the exceptions, and under numerous opinions of this court they will be considered as having been abandoned. Some of the later opinions are Wise v. Goldsmith's Adm'r, 239 Ky. 819, 40 S. W. (2d) 345; Roberts v. Roberts, 232 Ky. 739, 24 S. W. (2d) 554; and other prior ones cited in those opinions. There are others following them, and the rule is without exception in this jurisdiction and so far as we are aware is also true in other jurisdictions. If defendants' counsel had insisted on a ruling of the court upon his exceptions and it had declined to do so after such an application, then the merits of the exceptions would be properly presented for this court's consideration, and which was

so expressly held by us in the case of Lewis v. Lewis, 224 Ky. 18, 4 S. W. (2d) 1106. Not having pursued that course, the exceptions must be considered as waived, and for which reason ground (1) should be, and it is, overruled.

A portion of the argument in support of ground (2) is that appellant's husband was, under the provisions of section 606 of our Civil Code of Practice, an incompetent witness against his wife, and for which reason his testimony should be eliminated from the case, which, when done, counsel argues, leaves the case without sufficient testimony to support plaintiff's defense to the pleaded offset. One answer to this is made in our disposition of ground (1), whereby the objection to the testimony of the husband, if indeed he was incompetent (a question not now determined), was waived in the manner we have already stated. But without such waiver, and conceding the incompetency of the husband to testify against his wife so as to authorize us to ignore his testimony altogether, there is still left an abundant amount of proof in the case to sustain the court's rejection of the offset relied on.

Plaintiff testified, in substance, that her husband died in 1924 leaving her a widow without children and with property amounting to possibly as much as $15,-000. Austin Haywood is her brother, and he and his wife resided at Wayland, Ky. The latter ran a boarding house in which she and her husband also resided. Some time after the death of plaintiff's husband, because of the pecuniary circumstances of defendants, she made a gift to them of $1,000, and thereafter they began to beseech her to take up her abode with them and leave her premises in Lincoln county, Ky., and to become a member of their family. Finally she was prevailed upon to do so, and moved to Wayland and took up her abode in defendants' boarding house, which they continued to operate for about seventeen months, when they moved to Catlettsburg, Ky., where they embarked in the same business and plaintiff continued to reside with them as a member of their family. During such relationships she contributed to the necessities of the family at least $1,500 out of her own means. Some of that time plaintiff was more or less ill and sometimes confined to her bed, but generally speaking she was up and industriously engaged herself in performing work.

and labor towards the maintenance of the family. She also testified that not only was the question of her paying board never mentioned, but that on the contrary it was distinctly understood that she was not to pay board, since defendants desired her to live with them as a member of their family, and because of which she contributed her means to the extent above indicated, as well as bestowing the labor in which she engaged.

Moreover, the entire indebtedness sued on was incurred after the described relationship ceased, and which fact alone is a strongly corroborative one of plaintiff's testimony as given by herself. Appellant's husband in his testimony corroborated in every particular that given by plaintiff, his sister. Such proof is really not refuted by any that was introduced by defendant, except, perhaps, that to which she herself testified; but she did not claim therein that there was any specific contract by which plaintiff was to pay her and her husband board. She introduced some of her children, and perhaps another witness or two, who stated that plaintiff, while residing in defendant's home, said on some occasions that she was paying board for her occupancy of defendant's home—which, however, plaintiff denied in giving her testimony. But if she had made no such denial, then the proven statement she is alleged to have made would fall far short of sustaining defendant's right to recover on their offset claim, since the uncontradicted proof shows that plaintiff did perform some labor and that she contributed out of her own means for the benefit of the family more than what her board would amount to. Those facts would support such proven statements if actually made by her, since they demonstrate the truth that she was paying board. The execution of the notes and mortgage sued on, after the alleged board bill had accrued and became due and payable without any mention of it by defendants, is a most potent circumstance sustaining the court's finding disallowing the only defense interposed in the action.

But counsel vigorously insists that under an ancient equity and chancery rule of practice, plaintiff's testimony denying the allegations of defendants' verified answer is not sufficient to overcome it, since under such rule the testimony of one witness, uncorroborated by other testimony, will not overcome such verified allegations in a pleading filed in an equity cause, and he

672

cites in support of that contention 21 C. J. 569, and the cases from this court of Bright's Heir v. Haggin, Hardin 536; Littell v. McIver, 1 Bibb, 203; Myers v. Baker, Hardin, 544; and Bibb v. Smith, 1 Dana, 580. Other early cases from this court may be found in note 69 to the text of the cited Corpus Juris. But all of those cases were rendered long before the adoption of any Code of Practice in this. Commonwealth, after which such rule of practice was dispensed with and has not since been revived. Under the rule of practice invoked by counsel, verified pleadings were allowed to be introduced and relied on as evidence of the litigant who prepared and filed them, notwithstanding their averments might have been controverted, as is shown by the referred to text, supra, in 21 C. J.

In the same volume of Corpus Juris, on page 562, it is also stated that the rule has no application in jurisdictions where ''it is otherwise expressly provided.'' In support of that excerpt, reference is made to page 567 of the same volume, section 703, which says: ''Many modifications of the chancery rule under discussion are found in those jurisdictions where the practice is regulated to a greater or less extent by statutes or court rules. In code practice, plaintiff is not entitled to an answer making discovery, and an answer, even when required to be verified, is not evidence for defendant.'' The invoked rule, therefore, has no place in our modern practice, and therefore plaintiff's substantially uncontradicted testimony fully justified the finding of the chancellor denying defendants' offset, even if it was unsupported by other testimony or corroborating circumstances in the case.

For the reasons stated the judgment is affirmed.