# Johnson v. Calvert Fire Ins. Co.

Nov. 28. 1944.

Courtney C. Wells for appellant.

William Mellor and G. C. Wilson for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

On January 22, 1941, appellant purchased from the Gene Baker Motor Company an automobile for $1266, with cash payment of $522. The balance of $744 was financed through the Commercial Credit Corporation under a plan for payment of $50.94 in installments over a period of 18 months. The Motor Company procured for appellant a policy from the Calvert Fire Insurance Company indemnifying her against damages resulting from various causes, including loss by fire, she paying the premium. It provided for $1,000 indemnity to cover the value of the car at the time of damage, less a $50 deduction. At the time of the damage complained. of appellant had made payment of six monthly installments as per contract.

On July 29, 1941, the car ran off the road; was upset and burned, resulting in its complete destruction. She alleges that she gave due and timely notice to the motor company, finance company, and the insurer; that "they" took possession of the car and have "refused to make any adjustment, or to pay the damage and loss result-

ing from the accident, although she has at numerous times tried to obtain adjustment as provided by the policy.'' She alleged that on January 22, 1942, she wrote the Western Adjustment Company at Lexington, agent of the Commercial Credit Corporation, seeking adjustment, and received a reply to the effect that ''the adjuster is out of the city, and on his return the matter would be called to his attention.''. Her attorney also, in July 1942, wrote to the Credit Company seeking adjustment, and likewise to the insurer about the same date. These facts are alleged in her petition filed on October 5, 1942, in which she fixed the value of her car at the time of injury at $1,000, less a deduction of $50, seeking judgment against all three companies for that amount.

In her petition, apparently anticipating a defense, she sets out that clause of the policy reading: ''No suit or action on this policy or for the recovery of any claim hereunder shall be sustainable in any court of law or equity * * * unless commenced within twelve(12) months next after the happening of the loss; provided that where such limitation is prohibited by the laws of the State wherein the policy is issued, then in that event no suit or action under the policy shall be sustainable unless commenced within the shortest limitation permitted under the laws of such state.''

Appellant alleged that notwithstanding her futile efforts to reach adjustment that ''neither of these defendants denied liability, but made excuses to delay an adjustment of the matter until more than a year had elapsed from the date of the accident, and that then the defendant, Commercial Credit Corporation, through its agent, Adjustment and Inspection Company, informed her that it would rely upon the limitation provision above set out,'' Her petition sought relief from all three defendant companies, and they in due time demurred to the petition on the ground that the pleading showed that under the terms of the policy the action was barred. Before the court could pass on the demurrer, appellant amended and plead apparently all facts upon which she relied, i. e., the defendants by their acts in the premises had estopped themselves from resort to the plea of limitation. She sets out in full several letters (in addition to the one supra), all written almost a year following the destruction of the automobile. In a letter of July 2, 1942, addressed to the

Adjustment Company, Middlesboro, appellant's attorney detailed the facts relating to purchase, payments, insurance, and the destruction of the car, and the repossession by some or all of the defendants. This letter (referring to appellant) stated:

"She has requested me to say that in the event the car is a total loss, she is ready and able to pay the $50 and have the Acceptance Corporation or the Motor Company deliver her a new car, or that if it was not a total loss and can be or has been repaired she is willing to pay the $50 under her policy and take the car back. It is needless for me to say that we would much rather be able to dispose of this matter out of court if we can possibly do so, and I frankly see no reason why this cannot be done.* * * I would appreciate it if you would let me hear from you promptly."

The Adjustment Company replied on July 6, informing the attorney that its adjuster was on vacation, and suggesting that its files did not show that Miss Johnson's claim had been assigned to it. Further: "We are wondering if the loss has been reported to the insurance carrier, as it would be necessary that we receive the assignment either from the carrier or the finance company. It would be our suggestion that the motor company be again contacted to ascertain if the loss has been reported to the proper authorities. P. S. As soon as we receive the assignment of this loss we will give our prompt attention."

Appellant's attorney then called the motor company and was advised by the manager to write the finance corporation, and on July 9th he did so, the letter being a duplication of the July 2d letter, making the same proposal of adjustment. On July 18th the credit corporation wrote:

"We wish to advise that this purchaser allowed her account to become delinquent and due in full. Also the matter of loss was referred to Western Adjustment Company at Middlesboro by the Calvert Fire Insurance Company. We are advised by the Adjustment Company that they have made numerous efforts to contact Miss Johnson at Hazard, and were unable to do so. Any settlement should be made with the Western Adjustment Company who are insurance adjusters and who handle this matter. We have nothing to do with the handling of the insurance. It was necessary that we hold public

sale to dispose of the salvage, and we gave Miss Johnson registered notice, received by her 10-8-41. Kindly advise if you need further information.''

This ended the correspondence, and at the time of the last letter appellant had several days within the limitation to sue. Appellant by pleading these letters elaborated her original pleading, and insisted that by these and the first mentioned she was misled, deceived and defrauded. She alleged that at no time did defendants deny liability, or assure her she would have any trouble in adjusting her claim; that the adjustment was only a matter of contacting the proper parties and ascertaining the amount of damages. Had it not been for this, she said, she would have filed her action ''before the expiration of the one year from the date of the destruction of the car, and long prior to July 29, 1942.''

Without objection the demurrer was carried to the pleading as amended, the court sustaining the demurrer. Plaintiff declined to plead further, and the cause was ''submitted on the record as between plaintiff and the Calvert Fire Insurance Company.'' The court then, upon pleadings and exhibits, held that plaintiff was not entitled to recover, and dismissed her action. By this ruling he concluded that the limitation in the contract was valid, and that appellant had failed to show sufficiently that the insurer had done anything to estop it from availing itself of the defense. On the appeal the insurer is the sole appellee.

The contention that the limitation of one year, fixed by the contract, is not available because contrary to public policy in the face of the statutory limitation period, may be briefly answered. For quite a long period our courts held that it was contrary to public policy to undertake to extend the statutory periods of limitation. In Union Cent. Life Ins. Co. v. Spinks, 119 Ky. 261, 84 S. W. 1160, 69 L. R. A. 264, 7 Ann. Cas. 913, we held that it was not legal to shorten the period. This ruling was applied in Ætna Casualty & Surety Co. v. United States Gypsum Co. 239 Ky. 247, 39 S. W. 2d 234, the opinion being based solely on the Spinks case, supra. However, very recently we have overruled the Spinks' case, and following the reasoning and ruling of the Sixth Circuit Court of Appeals held that it is not contrary to public policy for parties to contract for a reasonably shorter period than that fixed by the statute. In

the opinion Burlew v. Fidelity & Casualty Co. of New York, 276 Ky. 132, 122 S. W. 2d 990, 121 A. L. R. 751, we quoted from the memorandum of the Sixth Circuit Court, wherein it said that the validity of contract shortening the period of limitation, if not unreasonable, was no longer an open question; finding also that neither Kentucky nor the home state of the insurer had a statute prohibiting that sort of contract. It may be noted the decision in the Burlew case turned on the same question later presented, whether or not the acts of the defendant had the effect of depriving it of the right to rely upon the contract.

An examination of texts and numerous cases cited show that the greater weight of authorities is to the effect that in the absence of an inhibitive statute insurance companies may legally write into their policies a limitation for a period shorter than that provided by statute. 29 Am. Jur., "Insurance" secs. 1392, 1401, 1402 and 1493.

It is conceded in these texts and all the cases we have had occasion to observe, including Thompson v. Phœnix Ins. Co., 136 U. S. 287, 10 S. Ct. 1019, 34 L. Ed. 408, that the period must be reasonable, and that the contractual limitation is not available to one who by his own acts has deceived, misled, or by fraudulent representations led, the complainant to believe that the defense would be waived, or not used to advantage. On this point, insofar as pertinent here, we need to refer to the letters, supra, incorporated into the pleadings, with the originals filed, ostensibly the only proof thought applicable and all upon which the case was submitted for determination. Giving them the strongest effect possible, they fail to manifest any expression which may be construed to be such as would indicate any fraud, misrepresentation, or any representation which could have misled or deceived appellant. None of them, nor all of them taken together, come near to measuring up to the facts or circumstances shown in cases in which the contention is discussed. See Clover Splint Coal Co. v. Lorenz, 270 Ky. 676, 110 S. W. 2d 457.

Another contention is that since the policy contained a waiting clause allowing the insurer a 60-day limit in which to make payment or adjustment, limitation should not begin to run until the expiration of that 60 days, notwithstanding the provision fixing the one year

674

limitation. Some courts have held to that rule. Dixon v. German Ins. Co. 11 Ky. Law Rep. 1001; Steel v. Phœnix Ins. Co., 51 F. 715. Others have decided otherwise, holding to the letter of the contract. However, it is unnecessary for us to discuss this phase, since it is shown that the happening of the loss was on July 29, 1941, and action begun on October 5, 1942. Eliminating the waiting period, the suit was instituted six days too late. A careful consideration of the record fails to disclose to us sufficient ground for determining that the contractual period was tolled by any act or word of the appellee, or those who were asserted to be its agents.

Judgment affirmed.

The whole Court sitting.